**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARK MOSHER,

                    Plaintiff,

                                                    Case No. 3:15-cv-1084-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Mark Mosher ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of panic disorder, anxiety, bipolar disorder, post-traumatic stress disorder ("PTSD"), and "back/neck injury." Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed December 14, 2015, at 438. Plaintiff filed his SSI application on May 5, 2011, when he was eighteen (18) years old, alleging an onset date of January 1, 2008. Tr. at 405. Plaintiff's application was denied initially, Tr. at 182-83, and upon reconsideration, Tr. at 189-90.

Hearings were held before an Administrative Law Judge ("ALJ") on May 16, 2013, Tr. at 97-128, and on August 22, 2013, Tr. at 63-96. At the May 16, 2013 hearing, the ALJ heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel. Tr. at 97-128. At the August 22, 2013 hearing, the ALJ again heard from Plaintiff and the VE, and a medical expert also testified. Tr. at 63-96. The ALJ subsequently denied

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed December 14, 2015; Reference Order (Doc. No. 16), entered December 15, 2015.

Plaintiff's claim in a decision issued on September 12, 2013.  Tr. at 152-69.  Plaintiff requested review by the Appeals Council.  Tr. at 299.

On May 27, 2014, the Appeals Council remanded the case back to the ALJ, primarily on the basis that the ALJ had failed to address the opinion from treating physician Ulyssess D. Findley, M.D.  Tr. at 177-78.  Pursuant to the Appeals Council's Order, the ALJ held another hearing on December 4, 2014, at which the ALJ heard testimony from a VE and from Plaintiff, who was still represented by counsel.  Tr. at 43-62.  On January 23, 2015, the ALJ issued a Decision finding Plaintiff not disabled "since May 2, 2011, the date the application was filed," and denying Plaintiff's claim.  Tr. at 35; see Tr. at 14-35.  The January 23, 2015 Decision "adopt[ed] and incorporate[d]" the summary of the medical evidence from the September 12, 2013 decision.[2]  Tr. at 21.

Plaintiff requested review by the Appeals Council, Tr. at 10, and submitted to the Council additional evidence in the form of a brief from his attorney, Tr. at 8; see Tr. at 519-20 (brief).  On April 27, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's January 23, 2015 Decision the final decision of the Commissioner. Tr. at 4-6.  On September 3, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[2] The ALJ explained as follows:

> With the exception of the medical records from [treating physician] Ulyssess Findley, MD, the undersigned [ALJ] finds that such summary is a correct summary of the evidence that was available at that time, and notes that neither the Appeals Council nor [Plaintiff] has identified any errors in the prior summary.  Therefore, the undersigned [ALJ] adopts and incorporates such summary.  Pursuant to the Appeals Council's order, this [D]ecision contains a more thorough discussion of the treating records from Dr. Findley and addresses the opinion he gave in exhibit 19F.  Additionally, it covers the new medical records that were received after the hearing, that was held on August 22, 2013.

Tr. at 21.

Plaintiff raises one issue on appeal: whether the ALJ "erred by not placing the appropriate weight on the opinions of [Plaintiff's] treating psychiatrist." Plaintiff's Memorandum in Support of Complaint (Doc. No. 19; "Pl.'s Mem."), filed January 5, 2016, at 8 (capitalization omitted). Plaintiff argues that the ALJ had no proper basis to discount the only treating opinion regarding mental impairments, having also discounted the non-examining medical opinions. See id. at 8-12. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") on April 6, 2016. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons discussed below.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 16-35. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 2, 2011,

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

the application date." Tr. at 16 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the spine including degenerative disk disease of the cervical spine, spondylosis, bulging or herniated disks at C5-6 and C6-7, resulting in mild spinal stenosis and neural foraminal stenosis; degenerative disk disease of the lumbar spine, spondylosis, bulging or herniated disk at L4-5 and L5-S1, resulting in mild neural foraminal stenosis; hypertension; affective disorder, [and] anxiety[.]" Tr. at 16-17 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work . . . . [He] needs a sit-stand option.  This means [he] needs the opportunity to change positions from sitting to standing at his option, to perform his tasks.  He needs to avoid ladders and unprotected heights. He needs to avoid the operation of heavy moving machinery.  He needs a low stress work environment with no production line. He needs simple tasks and must avoid contact with the public.  He can occasionally bend, crouch, kneel, or stoop but m[u]st avoid squatting or crawling.  He needs to avoid repetitive twisting of the spine and he needs to avoid extreme heat or cold.

Tr. at 19 (emphasis omitted).  At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a kitchen helper.  Tr. at 33 (emphasis and citation omitted).  At step five, the ALJ considered Plaintiff's age (eighteen (18) years old on the date the application was filed), "limited education," work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  Tr. at 33-34 (emphasis and citation omitted).  Relying on the testimony of the VE, the ALJ identified as representative jobs a labeler, a warehouse

checker, a table worker, and an addresser. Tr. at 34. The ALJ concluded that Plaintiff "has not been not under a disability . . . since May 2, 2011, the date the application was filed." Tr. at 26 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

The issue is whether the ALJ erred in assessing the opinion of Plaintiff's treating psychiatrist—and specifically, in discounting the psychiatrist's ultimate opinion while also

discounting the opinions of the other medical sources regarding Plaintiff's mental limitations. See Pl.'s Mem. at 8-12.

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's

---

[4] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and

supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); see also Colon v. Comm'r of Soc. Sec., No. 6:14-cv-378-Orl-DNF, 2015 WL 5599896, at *4 (M.D. Fla. Sept. 22, 2015) (unpublished) (interpreting Winschel's weight-articulation requirement to apply to non-treating opinions); Cranford v. Comm'r of Soc. Sec., No. 6:13-cv-415-Orl-GJK, 2014 WL 1017972, at *4 (M.D. Fla. Mar. 17, 2014) (unpublished) (stating that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability").

Here, Plaintiff's treating psychiatrist, Anjali Pathak, M.D., of AP Psychiatric Counseling Services ("AP Psychiatric"), completed a Medical Source Status Report on August 9, 2011. Tr. at 723-25. Dr. Pathak observed, among other things, that Plaintiff is anxious; that he has "racing thoughts"; that he "does not present with delusions"; that he "is alert and oriented x3"; that his "memory is intact"; and that he "is completing activities of daily living." Tr. at 723-25. She diagnosed Plaintiff as "Guarded," with "Obsessive Compulsive Disorder, Mood Disorder Not Otherwise Specified," and with a "History of Polysubstance Abuse." Tr. at 724.

Dr. Pathak opined, without elaboration, that Plaintiff "is unable to work due to severity of psychiatric illness." Tr. at 725. The record contains treatment notes from Dr. Pathak and AP Pychiatric, see Tr. at 581-99, 806-11, but there are no other opinions from Dr. Pathak with respect to Plaintiff's ability to function or maintain employment. Essentially, the only other opinions in the record regarding mental impairments are from two non-examining consultants who reviewed Plaintiff's medical records for the state disability agency. See Tr. at 133, 141.

The ALJ assessed Dr. Pathak's opinion as follows:

[A]lthough Anjali Pathak, MD was a treating physician, little weight is given to her opinion that stated [Plaintiff] was unable to work due to the severity of his psychiatric illness. As noted in the previous decision [issued September 12, 2013], this is internally inconsistent as well as inconsistent with the medical

> records from the office notes from AP Psychiatric Counseling Services which indicated [Plaintiff] was improving and stable on his medications. In the Medical Source Statement, Dr. Pathak said [Plaintiff] was competent to independently manage his funds or benefits; he was completing his activities of daily living; he was alert and oriented times three; his memory was intact; he denied and did not present with hallucinations or perceptual disturbances; and he had no psychomotor retardation. His thought process was free of looseness of association although he presented with racing thought. Dr. Pathak offered a prognosis of guarded and gave the diagnoses of obsessive compulsive disorder, mood disorder, not otherwise specified, and history of polysubstance abuse.

Tr. at 28 (emphasis added) (citing Exhibits 4F, 9F, and 15F); see Tr. at 581-99 (Exhibit 4F; AP Psychiatric treatment notes, June 2, 2010 to May 17, 2011); Tr. at 723-25 (Exhibit 9F; Treating Medical Source Status Report, AP Psychiatric, August 9, 2011); Tr. at 806-11 (Exhibit 15F; AP Psychiatric treatment notes, April 7, 2011 to July 5, 2011; patient history, December 22, 2011); see also Tr. at 162-63 (ALJ's September 12, 2013 decision; assessing Dr. Pathak's opinion).

In addition, with respect to the mental limitations, the ALJ summarized and evaluated the findings of the two non-examining state agency consultants, as follows:

> Keith Bauer, PhD, reviewed the record for the State agency and noted that the May 2011, medical evidence of record indicated [Plaintiff's] moods had been stable and he had had no depressive episodes. There were no follow-up visits or appointments. Based upon this evidence, Dr. Bauer was unable to find [Plaintiff] had a severe mental impairment. Janis Heffron, Ed.D. also examined the medical records. She noted that [Plaintiff] had reported that his mood was stable and he was going out with friends. He had begun to work at a fast food restaurant in April. Dr. Heffron found that [Plaintiff's] affective disorder and anxiety order was severe; however she found [Plaintiff] had no greater than mild limitations in the "B" criteria of the listings, including mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace. These limitations are inconsistent with finding [Plaintiff's] anxiety and affective disorder are severe. <u>Little weight is given to either of these opinions because the undersigned finds that the record demonstrates that [Plaintiff's] mental impairment is severe and his limitations are greater than those found by the State agency</u>.

Tr. at 28 (emphasis added) (citing Exhibits 1A and 3A); see Tr. at 130-35 (Exhibit 1A, including Dr. Heffron's evaluation); Tr. at 137-45 (Exhibit 3A, including Dr. Bauer's evaluation).

Finding that Plaintiff's mental impairments were "greater than those found by the State agency," Tr. at 28 (emphasis added), but less limiting than Dr. Pathak opined, the ALJ made the following overall evaluation:

> [Plaintiff] is moderately limited by his mental impairment. [He] has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present "constantly" or all of the time. [Plaintiff's] activities of daily living and the medical evidence of record suggest that [Plaintiff] can sustain a greater capacity than he described at the hearing or in his reports to the state agencies. Given this evidence, the undersigned concludes [Plaintiff] has not satisfied his burden to show he cannot work. The undersigned finds that neither the severity of his impairments nor the extent of his limitations is supported by the objective medical evidence of record. Furthermore, the limitations that do exist are adequately accommodated for in [Plaintiff's RFC] . . . .

Tr. at 33. As stated in the RFC finding, with respect to mental impairments, the ALJ determined Plaintiff "needs a low stress work environment with no production line" and that "[h]e needs simple tasks and must avoid contact with the public." Tr. at 19.

Plaintiff contends the ALJ "erred by failing to apply the treating physician rule in his evaluation of the evidence." Pl.'s Mem. at 8. Plaintiff further argues, "Because the ALJ discounted the opinions of the two State Agency doctors regarding the mental limitations, the only evidence that remained was the opinion of Dr. Pathak."[5] Id. at 12. As such, according to Plaintiff, the ALJ had no basis to discount Dr. Pathak's opinion, and thus, "the ALJ substituted his opinions for that of the treating medical health provider." Id.

---

[5] At another point in his Memorandum, Plaintiff states that "the only evidence to support a mental health impairment," aside from the state agency opinions, "are the opinions of AP Psychiatric (Dr. Pathak), a psychiatrist, and Dr. Findley, a medical doctor." Pl.'s Mem. at 10 (emphasis added). The ALJ did not address any opinion of Dr. Findley on this issue, and Plaintiff does not cite any such opinion here. Plaintiff asserts, instead, "Dr. Pathak is the specialist in this area." Id. Because Plaintiff challenges only the assessment of Dr. Pathak's opinion, Dr. Findley need not be discussed.

Upon review, the undersigned finds the ALJ properly articulated good cause to discount Dr. Pathak's opinion that Plaintiff is unable to work due to his psychiatric condition. The ALJ appropriately noted examples in the AP Psychiatric records that appear inconsistent with the opinion; among these, as quoted above, it was noted that Plaintiff "was improving and stable on his medications"; that he was "competent to independently manage his funds or benefits"; that he was "completing his activities of daily living"; that "he was alert and oriented times three"; and that "his memory was intact." Tr. at 28. Substantial evidence supports the ALJ's determination as to Dr. Pathak's opinion. See, e.g., Tr. at 582, 584, 587, 724-25, 808.

Furthermore, as the ALJ previously noted in the September 12, 2013 decision, "Dr. Pathak's opinion that [Plaintiff] is unable to work due to the severity of psychiatric illness is a legal conclusion left to the [ALJ]." Tr. at 163 (citing 20 C.F.R. §§ 404.1527(e)(1), 416.927(e); Social Security Ruling 96-5p). The ALJ, therefore, was "prohibited from affording such an opinion controlling or significant weight." Moon v. Comm'r of Soc. Sec., No. 8:12-cv-2911-T-27TWG, 2014 WL 548110, at *3 (M.D. Fla. Feb. 11, 2014) (unpublished).

Despite having discounted the medical opinions regarding the mental impairments, the ALJ did not improperly substitute his own opinion. Instead, the ALJ appropriately based his assessment of Plaintiff's mental impairments on the objective evidence in the record overall. See Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014) (unpublished) (stating that despite discounting the one medical opinion in the record, "the ALJ did not 'play doctor' in assessing [the claimant's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant's] RFC" (citing 20 C.F.R. § 404.1545(a)(3))); Green v. Soc. Sec. Admin., 223 F. App'x 915, 924 (11th Cir. 2007) (unpublished) (stating that although he discounted the treating physician's opinion, "[t]he ALJ

-11-

did not substitute his judgment for that of [the treating physician]; rather, he determined that [the treating physician's] opinion was inconsistent with objective medical evidence in the record"); Jackson v. Colvin, No. 8:14-cv-1159-T-TGW, 2015 WL 12844406, at *4 (M.D. Fla. July 16, 2015) (unpublished) (discussing Castle and Green, and stating that an ALJ's RFC finding "need not be based on a physician's opinion of the plaintiff's functioning" (citation and footnote omitted)).

The ALJ's evaluation of Plaintiff's mental impairments is supported by substantial evidence. This includes the treatment notes from Dr. Pathak and AP Psychiatric discussed by the ALJ in discounting Dr. Pathak's opinion. Tr. at 28; see, e.g., Tr. at 582, 584, 587, 724-25, 808. The ALJ, in effect, credited these treatment notes over Dr. Pathak's ultimate opinion that Plaintiff cannot work. As additional support, as the ALJ noted, Plaintiff testified that medication reduces his episodes of anxiety and his mood swings from bipolar disorder, Tr. at 29, 30; see Tr. at 48, 54-55, and that he occasionally goes shopping and attends church, Tr. at 29; see Tr. at 52, 55-56. As the ALJ also pointed out, Plaintiff stated on his Function Report on October 21, 2014 that he spends time with others on a weekly basis, doing activities such as "road trips, movies, make-up [(i.e., cosmetics)] and talking." Tr. at 31; see Tr. at 513; see also Tr. at 52. Furthermore, the ALJ considered evidence suggesting Plaintiff "has not been entirely compliant in taking prescribed medications." Tr. at 32; see, e.g., Tr. at 585.

In sum, the ALJ did not err in evaluating the medical opinions with respect to Plaintiff's mental impairments and in concluding, based on the record as a whole, that these impairments do not preclude Plaintiff from working in "a low stress work environment with no production line," doing "simple tasks" and "avoid[ing] contact with the public." Tr. at 19.

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 28, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record